UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

FRESENIUS VASCULAR CARE, INC., a
Delaware corporation,

          Plaintiff,

Case No:

vs.

OAKLAND PARK MEDICAL PROPERTIES,
LLC, a Florida limited liability company,

          Defendant.
_____/

**COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**

Plaintiff, Fresenius Vascular Care, Inc. ("**FVC**"), sues Defendant, Oakland Park Medical Properties, LLC ("**OPMP**"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for declaratory judgment and damages in excess of $75,000, exclusive of interest, attorneys' fees, and costs.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and is between citizens of different states.

3. Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1391 because the Defendant resides in this District, and all or a substantial part of the causes of action accrued in this District.

4. FVC has complied with all conditions precedent to the institution of this action, if any, the same have occurred, or the same have been waived by the Defendant.

5. FVC has retained the law firm of Holland & Knight LLP to represent it in this matter and is obligated to pay its counsel a reasonable fee. Pursuant to Section 14.7 of the Lease, as defined below, and Section 57.105(7), Florida Statutes, FVC is entitled to recover its reasonable attorneys' fees and costs in bringing these claims.

## THE PARTIES

6. Plaintiff FVC is a Delaware corporation with its principal place of business in Waltham, Massachusetts. FVC is an affiliate of Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America and is authorized to do business in the state of Florida. Fresenius Medical Care North America is a leading provider of life-saving kidney dialysis treatment and related services to patients in Florida and around the country suffering from renal disease.

7. Fresenius Medical Care Holdings, Inc. acquired American Access Care of Florida, LLC ("**AAC**," together with FVC, is the "**Tenant**") in 2011.

8. Defendant OPMP is a Florida limited liability company with its principal place of business in Ocala, Florida. OPMP has one member, Raymond Figueroa, a natural person who is a citizen of the state of Florida.

9. OPMP is the owner of the property located at 4650 North Dixie Highway, Oakland Park, Florida 33308 (the "**Premises**").

## FACTUAL ALLEGATIONS

10. On June 1, 2011, AAC and OPMP executed a Lease Agreement ("**Lease**") for the Premises for a period of ten (10) years, a true and correct copy of which is attached as **Exhibit A**.

11. Under Article 2 of the Lease, AAC "thoroughly examined the Premises and is fully familiar with the condition thereof, and, except as specifically set forth in this lease, neither

Landlord nor Landlord's agents have made any representations, warranties or promises, either express or implied, with regard to the physical condition of the Land, the Building, or the Premises, the use or uses to which the Premises may be put, or the condition of any mechanical, plumbing, electrical, flue, ventilation, or exhaust systems servicing the Premises."

12. AAC agreed to accept the Premises in "as is," where is" condition.

13. Before AAC took possession of the Premises under the Lease, the Premises had been closed a number of years and not operated in any commercial capacity. When last operated before June 2011, the Premises served some purpose as a medical office or medical surgical center. By the time AAC took possession, however, the Premises had been abandoned and were tattered, in a state of disrepair, not useable, and not certified by the state for any use as a medical office or medical surgical center.

14. As examples, set forth below are photographs that evidence the interior and exterior of the Premises before or around the time of the commencement of the Lease:



a.



b.



c.



d.



e.



f.

15. The Lease does not obligate Tenant to build out the Premises for any particular use or purpose at the inception of the Lease.

16. The Lease does not obligate Tenant to build out the Premises for any particular use or purpose before the term of the Lease ends.

17. Article 3 of the Lease permits the Tenant to use the Premises "as a medical practice, vascular access center, or ambulatory surgical center and any other use ancillary thereto."

18. Article 5 of the Lease sets forth base rent and additional rent obligations. As an incentive to agree to the Lease, OPMP provided AAC with a rent abatement during the first twelve months following commencement of the Lease.

19. From the commencement of the Lease until present, Tenant has paid all rent obligations owed under the Lease.

20. Article 7 of the Lease provides that the Tenant "shall, at its sole cost and expense, take good care of the Premises, and shall make repairs therein and thereon, to the interior of the

Premises…necessary to keep the same: (a) in good and safe order and condition, and (b) in substantially the same condition as of the date of this Lease, reasonable wear and tear excepted."

21. Article 9 of the Lease defines the Tenant's right to make alterations, replacements, changes, additions, and improvements (collectively, "**Alterations**"). Under Article 9, the Lease provides "prior to doing any Alterations, Tenant shall submit plans and specifications for such work to Landlord for review and approval, such approval not to be unconditionally withheld, conditioned or delayed."

22. Article 13 of the Lease provides that the Tenant "shall not assign this Lease nor sublet the Premises or any portion thereof without Landlord's prior written consent, which consent shall not be unreasonably withheld."

23. Article 26 of the Lease obligated AAC to deposit with OPMP a security deposit in the amount of $22,683.

24. AAC deposited the required security deposit with OPMP. Upon information and belief, OPMP continues to hold the security deposit pursuant to the terms of the Lease.

25. Following the commencement of the Lease, AAC was acquired by Fresenius Medical Care Holdings, Inc.

26. On February 1, 2014, AAC assigned the Lease to FVC, which assigned all of AAC's rights, duties, and obligations as a tenant under the Lease to FVC (the "**Assignment**"). FVC, in turn, assumed all rights, duties, and obligations under the Lease. OPMP consented to the Assignment. A true and correct copy of the Assignment is attached as **Exhibit B**.

27. When FVC agreed to the Assignment, the Premises was essentially an empty shell, not being used for any medical or other commercial purpose, and was vacant.

28. Since the Assignment, FVC has maintained the Premises in at least the same condition as at the commencement of the Lease, or better.

29. FVC has not occupied or used the Premises since the Assignment.

30. FVC has paid for and maintained security at the Premises, paid for upkeep and maintenance, and continued to pay rent and additional rent to OPMP.

31. At present, the Premises remains essentially an empty shell, not being used for any medical or other commercial purpose, and is vacant.

32. The term of the Lease will end on June 1, 2021.

33. Under Article 14 of the Lease, Tenant and OPMP waived the right to a trial by jury in any judicial proceeding arising out of or in connection with the Lease.

### COUNT I – DEMAND FOR DECLARATORY JUDGMENT

34. FVC incorporates and re-alleges Paragraphs 1 through 33 above.

35. This is an action for declaratory relief pursuant to Section 86.011 of Florida Statutes.

36. The controversy between the parties concerns the rights and obligations of Tenant under the Lease.

37. OPMP, on multiple occasions, asserted that under the Lease, the Tenant is required to build out the Premises before the term of the Lease ends for use as a functioning, licensed ambulatory surgical center ("**ASC**").

38. FVC, on multiple occasions, asserted that under the Lease, there is no requirement for the Tenant to build out the Premises for use as an ASC.

39. For example, on December 21, 2017, OPMP, through counsel, notified Tenant that Tenant was in purported breach of the Lease because Tenant failed to build out the Premises as an ASC.

40. FVC responded to this contention on January 16, 2018, and denied OPMP's claim and allegation of breach.

41. As the end of the Lease term neared, OPMP reasserted its contentions that Tenant was obligated to build out the Premises as an ASC and return the Premises at the end of the Lease as an ASC.

42. For example, on November 3, 2020, OPMP, through counsel, again claimed FVC had an obligation to build out an ASC on the Premises.

43. On November 19, 2020, FVC once more rejected OPMP's allegations of any purported breach of the Lease for failure to build out the Premises as an ASC.

44. On multiple occasions, including on September 11, 2020, and September 19, 2020, OPMP's principal and managing member, Raymond Figueroa, admitted that the Lease does not obligate Tenant to build out the Premises as an ASC either at the inception of the Lease or before the term of the Lease ends.

45. FVC has a substantial need for this Court to determine that the Lease does not require FVC to build out the Premises as an ASC or as any other medical facility before the term of the Lease ends.

46. At all times before and after OPMP alleged this purported breach, FVC was in compliance with all terms of the Lease and FVC continued to make timely rent and additional rent payments under the Lease.

47. FVC and OPMP are in disagreement as to:

      a.   Whether the Lease required the Tenant to build out the Premises into an ASC; and

      b.   Whether the Lease requires the Tenant to deliver an ASC at the end of the Lease.

48. There is a bona fide, actual, present and practical need for a declaration as to the rights of the parties under the Lease.

49. This action seeking a declaration deals with a present and ascertained state of facts, and it involves a present controversy as to those state of facts.

50. FVC's rights are dependent on the law applicable to those facts.

51. FVC and OPMP have an actual, present, adverse, and antagonistic interest in their rights, performance, and obligations under the Lease, either in fact or law.

52. The antagonistic and adverse interests of FVC and OPMP are all before the Court by proper process.

53. The relief sought is not merely the giving of legal advice by the Court or the answer to questions propounded from curiosity.

WHEREFORE, FVC seeks a declaratory judgment that the Lease does not require the Tenant to build out the Premises as an ASC and that the Lease does not require the Tenant to deliver an ASC at the end of the Lease, plus an award of attorneys' fees and costs incurred in seeking such a declaration, and an award of such other relief as this Court determines is proper.

## COUNT II – BREACH OF LEASE AGREEMENT

54. FVC incorporates and re-alleges Paragraphs 1 through 33 above.

55. On February 1, 2014, FVC assumed all of AAC's rights, duties, and obligations as Tenant under the Lease, with OPMP's consent.

56. Both the Lease and the Assignment constitute valid contracts.

57. On or about May 9, 2018, FVC requested OPMP's consent to assign the Lease to La Colonia Medical Center, Inc. ("**La Colonia**"). La Colonia was a proposed new tenant who was qualified, ready, and willing to accept an assignment of the Lease and enter into a new long-term lease agreement with OPMP or its designee.

58. At all times before and after FVC requested OPMP's consent to an assignment of the Lease, FVC was in compliance with all terms of the Lease and FVC continued to make timely rent and additional rent payments under the Lease.

59. Under Article 13 of the Lease, OPMP was obligated not to unreasonably withhold its consent in response to FVC's request to assign the Lease to La Colonia.

60. Contrary to OPMP's obligation not to unreasonably withhold its consent, however, OPMP stated its consent was contingent upon a number of terms. OPMP's terms were unreasonable and contrary to the terms of the Lease.

61. OPMP conditioned its consent to an assignment on at least the following terms:

   a. OPMP demanded that Tenant build out the Premises as an ASC and return the Premises as an ASC at the end of the term of the Lease;

   b. OPMP demanded that Tenant accept and guaranty liability for Lease obligations after the Lease was to terminate by its own terms, despite the fact that at that time and now Tenant has no obligation to OPMP after expiration of the Lease;

   c. OPMP demanded that Tenant pay for OPMP's attorneys' fees in connection with the proposed assignment of the Lease; and

   d. OPMP demanded an inflated and unreasonable purchase price that was millions of dollars above fair market value in response to La Colonia's expressed interest in ultimately purchasing the Premises.

62. Further, OPMP unreasonably delayed, without justification, in responding to FVC's efforts to negotiate and document the proposed assignment.

63. The unreasonable conditions and delays inhibited FVC's ability to complete the proposed assignment. As a result, FVC lost the ability to assign the Lease.

64. OPMP breached the Lease by unreasonably withholding its consent to FVC's requested assignment of the Lease to La Colonia.

65. FVC notified OPMP that its demands in exchange for consent to the requested assignment were contrary to the terms of the Lease. Any further notice under the Lease or otherwise of OPMP's breach or default was futile as OPMP was unwilling to withdraw its demands and any effort to cure would not have saved the intended assignment to La Colonia.

66. OPMP's breach was material and has caused FVC damages, including damages in the form of rent paid to OPMP that FVC would not have been obligated to pay had OPMP not unreasonably withheld its consent, plus attorneys' fees and costs and expenses of this lawsuit.

WHEREFORE, FVC requests that this Court enter a judgment against OPMP for damages, including pre-judgment and post-judgment interest and attorneys' fees and costs, and award such other relief as this Court determines is proper.

**COUNT III – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

67. FVC incorporates and re-alleges Paragraphs 1 through 33 and 61 above.

68. On February 1, 2014, FVC assumed all of AAC's rights, duties, and obligations as Tenant under the Lease, with OPMP's consent.

69. Both the Lease and the Assignment constitute valid contracts.

70. Under Florida law, every contract contains an implied covenant of good faith and fair dealing.

71. The implied covenant of good faith and fair dealing protects the parties' reasonable commercial expectations.

72. On or about May 9, 2018, FVC requested OPMP's consent to assign the Lease to La Colonia. La Colonia was a proposed new tenant who was qualified, ready, and willing to accept an assignment of the Lease and enter into a new long-term lease agreement with OPMP or its designee.

73. At all times before and after FVC requested OPMP's consent to an assignment of the Lease, FVC was in compliance with all terms of the Lease and FVC continued to make timely rent and additional rent payments under the Lease.

74. Under Article 13 of the Lease, OPMP was obligated not to unreasonably withhold its consent in response to FVC's request to assign the Lease to La Colonia.

75. OPMP stated its consent was contingent upon a number of terms. OPMP's terms were unreasonable and contrary to the terms of the Lease.

76. Further, OPMP unreasonably delayed, without justification, in responding to FVC's efforts to negotiate and document the proposed assignment.

77. OPMP owes a duty of good faith and fair dealing to FVC under the Lease.

78. OPMP's conduct, notably, the unreasonable conditions and delays tied to the proposed assignment, was not commercially reasonable and/or frustrated FVC's reasonable expectations under the Lease.

79. OPMP breached its duty of good faith and fair dealing relating to Article 13 of the Lease by unreasonably withholding its consent.

80. As a result of OPMP's breach of the covenant of good faith and fair dealing, FVC has suffered damages, including damages in the form of rent paid to OPMP that FVC would not

have been obligated to pay had OPMP not unreasonably withheld its consent, plus attorneys' fees and costs and expenses of this lawsuit.

WHEREFORE, FVC requests that this Court enter a judgment against OPMP for damages, including pre-judgment and post-judgment interest and attorneys' fees and costs, and award such other relief as this Court determines is proper.

### COUNT IV – BREACH OF LEASE AGREEMENT

81. FVC incorporates and re-alleges Paragraphs 1 through 33 above.

82. On February 1, 2014, FVC assumed all of AAC's rights, duties, and obligations as Tenant under the Lease, with OPMP's consent.

83. Both the Lease and the Assignment constitute valid contracts.

84. In or around June and July 2020, in accordance with the Lease, FVC requested OPMP's consent to Alterations of the Premises. Specifically, FVC proposed a building out of the Premises into a medical office or similar space. FVC also proposed replacing the existing HVAC unit at the Premises with a new HVAC unit of satisfactory tonnage and size to support the Premises.

85. At all times before and after FVC requested OPMP's consent to Alterations, FVC was in compliance with all terms of the Lease and FVC continued to make timely rent and additional rent payments under the Lease.

86. Under Article 9 of the Lease, OPMP was obligated not to unconditionally withhold, condition, or delay its consent in response to FVC's Alterations request.

87. Contrary to OPMP's obligation not to unconditionally withhold, condition, or delay its consent, OPMP imposed commercially unreasonably conditions in response to FVC's Alterations request.

88. Despite various offers by FVC to compromise on the proposed Alterations, OPMP never approved FVC's Alterations request.

89. OPMP breached the Lease by imposing commercially unreasonably conditions in response to FVC's request for consent to make Alterations to the Premises.

90. OPMP's breach was material and has caused FVC damages, plus attorneys' fees and costs and expenses of this lawsuit.

WHEREFORE, FVC requests that this Court enter a judgment against OPMP for damages, including pre-judgment and post-judgment interest and attorneys' fees and costs, and award such other relief as this Court determines is proper.

**COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

91. FVC incorporates and re-alleges Paragraphs 1 through 33 above.

92. On February 1, 2014, FVC assumed all of AAC's rights, duties, and obligations as Tenant under the Lease, with OPMP's consent.

93. Both the Lease and the Assignment constitute valid contracts.

94. Under Florida law, every contract contains an implied covenant of good faith and fair dealing.

95. The implied covenant of good faith and fair dealing protects the parties' reasonable commercial expectations.

96. In or around June and July 2020, in accordance with the Lease, FVC requested OPMP's consent to Alterations of the Premises. Specifically, FVC proposed a building out of the Premises into a medical office or similar space. FVC also proposed replacing the existing HVAC unit at the Premises with a new HVAC unit of satisfactory tonnage and size to support the Premises

97. At all times before and after FVC requested OPMP's consent to Alterations, FVC was in compliance with all terms of the Lease and FVC continued to make timely rent and additional rent payments under the Lease.

98. Under Article 9 of the Lease, OPMP was obligated not to unconditionally withhold, condition, or delay its consent in response to FVC's Alterations request.

99. OPMP stated its consent was conditioned upon a number of terms. OPMP's conditions to its consent were commercially unreasonable, unsupported by evidence, and contrary to the terms of the Lease.

100. Despite various offers by FVC to compromise, OPMP never approved FVC's proposed Alterations to build out the Premises.

101. OPMP owes a duty of good faith and fair dealing to FVC under the Lease.

102. OPMP's conduct in response to FVC's Alterations request was not commercially reasonable and/or frustrated FVC's reasonable expectations under the Lease.

103. OPMP breached its duty of good faith and fair dealing relating to Article 9 of the Lease by imposing unreasonable conditions in response to FVC's request for consent to make Alterations to the Premises.

104. OPMP's breach was material and has caused FVC damages, plus attorneys' fees and costs and expenses of this lawsuit.

WHEREFORE, FVC requests that this Court enter a judgment against OPMP for damages, including pre-judgment and post-judgment interest and attorneys' fees and costs, and award such other relief as this Court determines is proper.

Respectfully submitted,

*/s/ Paul McDermott*
Paul McDermott
Florida Bar No.: 855901
paul.mcdermott@hklaw.com
**HOLLAND & KNIGHT LLP**
100 N. Tampa St., Suite 4100
Tampa, Florida 33602
Phone: 813-227-8500 / 813-229-0134 Fax
*Attorneys for Plaintiff*

Dated: March 19, 2021